**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT J. SERAPHIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SBC INTERNET SERVS., INC., d/b/a AT&T INTERNET SERVS., INC., et al.,<br><br>Defendants. | Case No.: CV 09-131-S-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTIONS**<br><br>**(Docket No. 24 & 53)** |

Currently pending before the Court is Defendants' Motion to Dismiss First Amended Complaint (Docket No. 24) and Motion for Leave to File Supplemental Authority in support of the Motion to Dismiss (Docket No. 53). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order:

## I. BACKGROUND

In September of 2005, Plaintiff Robert J. Seraphin ("Seraphin") subscribed to an internet service plan with Defendants, agreeing to pay $14.95 a month for a 12-month term. First Am. Compl. ("Compl."), at ¶ 13 (Docket No. 19). Ten months later, Seraphin moved from California to Idaho, where Defendants do not offer internet service. *Id.* at ¶¶ 14-16. Seraphin contacted Defendants to notify them of his move and was informed that "if he moved, he would be charged a $200 [early termination fee ("ETF")] for terminating his service before the expiration of 12

months." *Id*. at ¶ 15. Defendants charged, and Seraphin paid, a $200 ETF. *Id*. at ¶ 17. The total cost for 12 months of service without early termination would have been $179.40.

Seraphin brings this action on behalf of himself, and all others similarly situated,[1] claiming that the $200 ETF charge to subscribers who cancel a term service contract amounts to an unenforceable penalty under California law (count one), violates California's consumer protection law (count two), and unjustly enriches Defendants (count five). As part of Seraphin's class action allegations, he requests declaratory relief for all class members concerning their respective rights and duties under the service agreement (count three) and raises claims for violation of 15 state consumer protection laws (count four). Defendants move to dismiss each of Seraphin's claims with prejudice under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim.

## II. DISCUSSION

### A. Preliminary Matter - Consideration of Frias Declaration

Defendants submitted the Declaration of Michael Frias in support of their Motion to Dismiss. (Docket No. 24-1). Mr. Frias states that he is a Senior Marketing Manger with AT&T Internet Services and when a customer initiated a contract with AT&T at the time Seraphin did–September 2005– each was required to accept the Terms of Service ("TOS") in effect at that time, a copy of which Mr. Frias attached to his declaration. Frias Decl., ¶¶ 3-4 (Docket No. 24-1).

Although Seraphin does not dispute he agreed to a "term commitment" pursuant to some version of Defendants' TOS he "cannot confirm or deny" that the TOS attached to Mr. Frias's

[1] The First Amended Complaint defines the proposed class to include subscribers who paid $20 or less per month for internet services and were assessed an ETF. Compl. ¶ 1.

Declaration is the TOS that applies to him and, therefore, argues it should not be considered in support of Defendants' motion. Pl.'s Mem., p. 3 (Docket No. 37). At the hearing, Seraphin's counsel reiterated that without further discovery Seraphin cannot concede that the Frias Declaration contains the TOS the parties entered, with all of the terms to which the parties agreed.

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Although the court may consider documents incorporated by reference in the First Amended Complaint without converting the motion to dismiss into one for summary judgment, *see id.*,[2] where a factual dispute exists a Rule 12(b)(6) motion should be converted to a motion for summary judgment, *U.S. v. Ibrahim*, 522 F.3d 1003, 1006 (9th Cir. 2008).

Although a factual dispute exists regarding what version of Defendants' TOS governs the parties' contractual relationship, the Court will assume, for purposes of the present Motion only, that the TOS attached to the Frias Declaration governs the parties' relationship. As explained in more detail below, however, even under those terms Seraphin may proceed at this stage of the proceedings.

---

[2] In *Ritchie*, the Ninth Circuit explained that, even if a document is not attached to a complaint, a defendant may offer it and the court may incorporate it by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. 342 F.3d at 908.

**B. Standard of Review for FRCP 12(b)(6) Motions**

FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). While a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 557 (internal quotation marks omitted).

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "[FRCP] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950. Second, only a

complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Simpson*, 452 F.3d at 1046. The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**C. Count One: Violation of Cal. Civil Code § 1671**

Seraphin alleges Defendants' $200 ETF is an unenforceable liquidated damages clause under California law[3] because it penalizes consumers and attempts to coerce them into maintaining their internet service with Defendants rather than compensating Defendants for actual damages incurred by the customer failing to complete their term commitment. Compl. at ¶¶ 19, 34-35. Defendants argue that the ETF provision is not a liquidated damages clause, but rather a lawful alternative performance provision, that is, it "permits customers to voluntarily

---

[3] The TOS attached to the Frias Declaration provides that the "TOS and the relationship between [the parties] . . . will be governed by the laws of the State of California without regard to its conflict of laws provisions." Frias Decl., Ex. 1, p. 22. Neither party has argued that another state's law should govern.

choose to pay the ETF in lieu of further performance of their contractual obligations." Defs.' Mem., p. 6.

California Civil Code Section 1671(d) voids contract provisions liquidating damages for breach of contract, except in circumstances not at issue here, i.e., if the contracting parties agree upon a presumed amount of damages sustained by a breach when "from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." To constitute liquidated damages under California law, a contract provision must "arise from a breach" and "provide a fixed and certain sum." *Ruwe v. Cellco Partnership*, 613 F. Supp. 2d 1191, 1196 (N.D. Cal. 2009) (citing *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002)). "The question whether a contractual provision is an unenforceable liquidated damages provision is one for the court. . . . [A] reviewing court ordinarily assumes as true the facts alleged in the complaint, [however,] a pleader's legal characterization of a contract is not controlling, particularly when the contract is attached to the pleading." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005).

The Court must examine the "true function and operation" of the ETF in order "to determine the legality of a provision" and not look merely to its characterization in the TOS. *Hutchison v. AT & T Internet Servs., Inc.*, 2009 WL 1726344, *3 (C.D.Cal. May 5, 2009) (citations and internal quotation marks omitted); *see also Roden v. AmerisourceBergen Corp.*, 155 Cal. App. 4th 1548, 1570 (2007). Thus, regardless of whether the EFT is imposed for an action labeled as a "breach" in the contract, it still may amount to a liquidated damages penalty.[4]

---

[4] Seraphin committed to one year of internet service and canceled his service prior to expiration of that term. *See* Frias Declr., Ex. 1, pp. 11, 17. Seraphin may plausibly argue that his cancellation, in effect, is a breach of his contract.

If the Court finds that the ETF's true function was as an alternative performance provision, then Section 1671 is inapplicable to the provision and Seraphin's claim fails as a matter of law. Defendants argue that the "defining characteristic of an alternative performance provision is the existence of a *rational* choice between alternatives *at the time of contracting*." Defs.' Reply, p. 5 (Docket No. 40) (emphases in original). Defendants describe Seraphin's two layers of options as (1) choosing a different type of contract at the outset, e.g., a pre-paid annual membership plan or a month-to-month service plan, neither of which contains an ETF, and (2) under the terms of the contract, retaining twelve full months of service at the $14.95 per month charge or retaining the service for less than 12 months and paying the ETF along with the monthly fee for the months of service. Defs.' Mem., p. 10 (Docket No. 24-3).

The Court has concerns with Defendants' proposed alternatives. To consider the first option, the Court must look beyond both the First Amended Complaint and the TOS to ascertain whether Seraphin's contracting alternatives–pre-paid or month-to-month–charge no ETF. Although these options are mentioned in the TOS, the terms are not fully described. *See* Frias Decl., Ex. 1, pp. 11, 17 (Docket No. 24-1); *see, e.g., id.* at p. 11 (stating that a member enrolled in "a pre-paid annual membership plan may cancel his or her membership but will only be entitled to a refund as and *if perfmitted under the terms and conditions of that plan*") (emphasis added). This raises factual issues that prevent full consideration at this time.

With regard to the second layer of options, one California court has explained: "[I]f one mode of performance had been clearly inferior to the other at the time of the contract, and had existed merely to coerce the owner to choose the first mode, then the element of rational choice would have been lacking." *Hutchison v. AT & T Internet Servs., Inc.*, 2009 WL 1726344, *4

(C.D.Cal. 2009) (discussing *Blank v. Borden*, 11 Cal.3d 963, 971, 524 P.2d 127, 132, 115 Cal.Rptr. 31, 36 (Cal. 1974)). In other words, "while an alternative promise to pay money when it presents a conceivable choice is valid, . . . if a contract is made by which a party engages himself either to do a certain act or to pay some amount which at the time of the contract no one would have considered an eligible alternative, the alternative promise to pay is unenforceable as a penalty." *Blank*, 11 Cal.3d at 971, 524 P.2d at 132, 115 Cal.Rptr. at 36 (quoting McCormick, Damages (1935) § 154, p. 618) (internal quotation marks omitted)).

Seraphin raises a valid concern that paying $179.40 (the total cost for 12 months of internet service at $14.95 a month) or paying $200 *plus* the monthly charges the consumer must pay, are not equally advantageous options. Defendants rely on a recent California case in their attempt to demonstrate that such alternatives have a rational basis. In the *Hutchinson* decision referenced above, the trial court ruled that a $200 ETF functioned not as a penalty, but as an alternative performance provision. *Hutchinson v. AT&T Internet Servs.*, 2009 WL 1726344, at *4. The court explained:

> Plaintiffs were presented with two means of fulfilling their obligations under the Agreement: 1) retain the full year of service for approximately $40 a month, or 2) retain service for less than a year and pay the monthly rate for the service received in addition to the $200 ETF. At the time Plaintiffs entered into the Agreement, these were each "realistic and rational choices." Neither the Plaintiffs, nor the Defendants, at the time the Agreement was entered into, knew if or when Plaintiffs would cancel their term of service. As a result, Plaintiffs could foresee, at the time of the contract, rationally choosing either performance option depending on the particular circumstances before it. Furthermore, Plaintiffs could view having the choice presented by the Agreement as potentially reducing their contractual obligation just as probably, if not more probably, than potentially increasing it. If Plaintiff desired to end their service early in the year, after only three months for example, they could choose to do so and pay

> the ETF, resulting in an approximately $160 reduction in their obligation. On the other hand, if Plaintiffs desired to cancel their service more than approximately seven months into the year, as Plaintiffs ultimately did, they could only do so at the cost of increasing their contractual obligation. The fact that Plaintiffs ultimately found themselves in the latter situation does not alter the fact that, at the time of the Agreement, the ETF presented a potentially rational and beneficial option for performance.

*Id.* (internal citations and footnotes omitted).

In stark contrast to the facts in *Hutchinson*, however, the $200 ETF in the present case was *always* more than the remaining payments under Seraphin's term commitment, even if he cancelled in the first month of his twelve month commitment. Thus, the parties here did not enter "into an agreement wherein alternative modes of performance were stipulated that could each benefit either party depending on subsequent circumstances." *Hutchison*, 2009 WL 1726344, *5. Rather, it was apparent at the time of the contract that "one mode of performance would be at all or at most times inferior."[5] *Id.*

Defendants also rely on the following language from *Morris v. Redwood Empire Bancorp*: "Where a contract for a specified period of time permits a party to terminate the agreement before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely an alternative to performance, and not a penalty." 128 Cal.App.4th 1305, 1314, 27 Cal.Rptr.3d 797, 803 (Cal.App. 4 Dist. 2005). The court in *Morris* explained how the particular details of that case impacted its decision: "A merchant seeking to open an account

---

[5] Defendants submitted supplemental authority, *Minnick v. Clearwire*, ___ F. Supp. 2d ___, 2010 WL 431879 (W.D. Wash. Feb. 5, 2010), that relies on the *Hutchison* case. The Court is not persuaded by this supplemental authority because it relies largely on portions of the inapposite *Hutchinson* decision. Thus, *Minnick* adds nothing novel to the Court's discussion of the issues and will not be addressed.

with [defendant] National knows at some point he or she must pay the $150 termination fee, and may, if desired, create a reserve against this liability. Thus, *the fee is merely a deferred charge attendant to initiating the account*." *Id.* Here, it was not inevitable that Seraphin would have to pay the $200 ETF, unlike in *Morris*, where "this very inevitability takes the provision out of the realm of liquidated damages, which by definition are assessed only upon a breach." *Id.* Thus, Seraphin has presented a plausible claim that the ETF operates as a liquidated damages clause.

The Court recognizes that provisions liquidating damages for breach of contract may be valid "unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Code § 1671(b). *See also Utility Consumers' Action Network, Inc. v. AT&T Broadband of S. Ca., Inc.*, 135 Cal. App. 4th 1023, 1029, 37 Cal. Rptr. 3d 827, 832 (Cal.App. 2d Dist. 2006) (explaining that the amount selected must "represent a reasonable endeavor by the parties to estimate fair compensation for the loss sustained" for the provision to be lawful). For the same reasons considered in the discussion above concerning whether the ETF is an alternative damages clause or an alternative performance provision, the Court finds that Seraphin has presented a plausible claim that the ETF, if it amounts to a liquidated damages clause, was unreasonable at the time the contract was made. Accordingly, dismissal of Seraphin's claim at this stage in the litigation would be premature because he has presented a plausible claim for relief sufficient to withstand the motion to dismiss. Because the factual record has not been fully developed, the Court's decision today is for purposes of the motion to dismiss only and is not ultimately controlling on the issue of whether the ETF provision operates as an unlawful liquidated damages provision.

**D. Count Two - Unfair Competition, California Code § 17200, *et seq*.**

California Business & Professional Code § 17203 states, in part, that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Unfair competition, as defined in the statute, encompasses "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. Under California law, the unlawful, unfair, or fraudulent prongs of the analysis are disjunctive – i.e., a claim may be brought if a practice, although lawful, is unfair. *See Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("'In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'") (internal citations omitted)); *Walker v. Countrywide Home Loans, Inc*., 98 Cal. App. 4th 1158, 1169 (2002).

Seraphin alleges that Defendants violated California's Unfair Competition Laws ("UCL"), § 17200 *et seq*., by engaging in an unlawful and unfair business practice of charging their customers a fixed ETF that substantially exceeds the damages Defendants may suffer, if any, when customers cancel Defendants' service before the expiration of their service term. Compl. ¶¶ 38-40. Seraphin's claim that Defendants violated the UCL by imposing an unlawful ETF survives the motion to dismiss because it is predicated on Seraphin's claim that the ETF is an unlawful liquidated damges clause under Section 1671, which the Court has already found sufficiently states a claim for relief. *See, e.g.*, *Farmers Ins. Exch. v. Super. Ct.*, 826 P.2d 730, 734 (Cal. 1992) (explaining that the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL]").

Seraphin also alleges that the ETF "practice is unfair because Defendants charge their customers the same ETF regardless of the amount of their monthly payments, the date of cancellation, the reason for cancellation, or the Defendants' inability to provide internet service in certain areas." Compl. ¶ 40. Defendants counter that the ETF is not unfair because its utility outweighs its burden, if any, and other forms of contracts without ETFs are available. Defs.' Mem. on Mot. Dismiss, pp. 13-14.

Some California courts have stated that an unfair business practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984). Other California courts have stated that it is a balancing test based on the utility of the practice, where a court must "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." *State Farm Fire & Casualty Co. v. Sup. Ct.*, 45 Cal. App. 4th 1093, 1104 (1996). Either way, issues remain that require the Court to look beyond the First Amended Complaint for resolution. The items appropriately to be considered may be the actual costs incurred, if any, by Defendants when customers terminate their service, and the terms of the other service contacts available to customers, including the relative costs of those plans.

Although the Court recognizes that it may dismiss a UCL unfairness claim at an early stage if "the facts as pled would not state a claim even if they were true," that is not the case here. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554, 62 Cal. Rptr. 3d 177, 185 (2007). The Court must weigh the ETF's utility against the burdens imposed and the facts, as pled here, may state a claim for unfair practices.

**E. Claim Three: Declaratory Relief**

"Plaintiff and the Class Members contend that Defendants are engaging in and continue to engage in an improper practice of charging and collecting an ETF that exceeds the damages Defendants may suffer, if any, when customers cancel Defendants' service before the expiration of their service term" and, therefore, "a judicial declaration is necessary and appropriate at this time . . . in order that Plaintiff and the Class members may ascertain their rights and duties with respect to Defendant's practice of charging an ETF." Compl., ¶¶ 45-46.

Defendants request dismissal of Seraphin's claim for declaratory relief because it is premised on claims one and two, which Defendants argue are futile. As explained above, these claims have not been dismissed, so the declaratory relief claim is not subject to dismissal on a futility basis.

Defendants' alternative basis for dismissal of the declaratory relief claim is that Seraphin "requests relief for only past alleged wrongs[;] . . .[h]e has already chosen to terminate his term DSL contract early and has paid the ETF." Defs.' Mem. on Mot. Dismiss, p. 18. This is true with respect to Seraphin, who has terminated his internet service and paid the $200 ETF, but not necessarily true as to the proposed class members.

This Court finds the reasoning *of Cruz v. Bowen*, 672 F. Supp. 1300 (N.D. Cal. 1987) persuasive here. In *Cruz*, the class representatives challenged the constitutionality of certain social security guidelines. After the plaintiffs initiated their suit the defendant reversed its position with respect to the class representatives' social security claims. The *Cruz* court rejected defendant's argument that plaintiffs lacked standing to assert their claims, including their claim for declaratory relief on behalf of the class, noting that not only had the guidelines been applied

to the class representatives, they "will be applied to" others. 672 F. Supp. at 1304. Accordingly, the Court will deny Defendants' Motion to Dismiss the declaratory relief claim, but without prejudice to Defendants reasserting this argument when the Court rules on any class certification issues.

**F. Claim Four: Claims for violation of 15 state consumer protection laws**

Defendants seek dismissal of Seraphin's claims under the consumer protection statutes of 15 states, arguing that Seraphin has no individual claim, "standing," under those states' laws. The TOS Defendants claim was in effect at the time Seraphin contracted for DSL service provided that the "TOS and the relationship between [the parties] . . . will be governed by the laws of the State of California without regard to its conflict of laws provisions." Frias Decl., Ex. 1, p. 22. Seraphin does not dispute that his contract with Defendants is governed by California law. He asserts other states' consumer protection laws as claims on behalf of class members who may reside in those states. Pl.'s Mem., p. 21 (Docket No. 37). There is no information in the record regarding whether the proposed class members' TOS are governed by California law.

Seraphin has consented to a non-prejudicial dismissal of his multi-state consumer protection claims, but only if Defendants agree "that the Court may, in its discretion, allow their reinsertion through amendment of the pleadings should discovery reveal their necessity." Pl.'s Mem., p. 24. Defendants seek dismissal with prejudice. Defs.' Reply, p. 7 (Docket No. 40).

Seraphin relies upon *Vernon v. Qwest Communications International, Inc*. 2009 WL 2160778, *3 (W.D.Wash. 2009). In *Vernon*, the defendants argued that the plaintiffs "lacked standing to assert claims under the consumer protection act statutes of states in which the [p]laintiffs do not reside." The district court determined that the standing issue was not ripe at

the time it ruled on defendants' motion to dismiss, "because the class certification issue is logically antecedent to the standing issue." *Id.* at * 4 (citing *Jepson v. Ticor Title Ins. Co.,* No. C06-1723-JCC, 2007 WL 2060856, *1 (W.D.Wash. May 1, 2007)).[6]

Although Seraphin is not required to add a plaintiff from each state in Defendants' service area in order to survive a motion to dismiss, Seraphin is required to put forth sufficient allegations that the class members would have standing. Here, that would require information about the TOS contracts governing those class members' internet service arrangements with Defendants. Because that is lacking, the Court will grant Defendants' motion to dismiss the consumer protection claims brought under other states' laws, but without prejudice to Seraphin reasserting those claims if a class is certified and those class members have standing to assert claims under other states' laws. It is therefore unnecessary at this time to address the specific procedural and substantive requirements of each state's consumer protection statute.[7]

**G. Claim Five - Unjust Enrichment**

Defendants' Motion will be granted on the unjust enrichment claim, because unjust enrichment applies only when a party has no enforceable contract. *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc*., 94 Cal. App. 4th 151, 172 (2001); *Hedging Concepts, Inc. v.*

---

[6] Admittedly, in *Vernon*, the court relied on the conclusion in *Jepson* that there was "no question that the proposed class would have standing to assert [consumer protection claims in states other than those in which the named plaintiffs resided] if it were certified," and that question remains here. *Jepson* at *1.

[7] Although this ruling makes it unnecessary to rule on Defendant's argument that these consumer protection claims do not satisfy the pleading requirements of Federal Rules of Civil Procedure 9(b) or 8(2)(a), the Court notes that in many cases fraud is not an essential element of a consumer protection at claim if a plaintiff does not allege facts that constitute fraud and the gravamen of the complaint is not fraud. *See Vernon*, 2009 WL 2160778 at *5.

*First Alliance Mort. Co.*, 41 Cal. App. 4th 1410, 1420 (1996). Here, the parties have a contract governing their relationship and, even if the ETF provision is declared unlawful or unfair under the various statutes Seraphin relies on, the remainder of the contract remains in force.

**III. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss First Amended Complaint (Docket No. 24) is DENIED, in part, and GRANTED, in part. Plaintiff's claims for violation of 15 state consumer protection laws (count four), and unjust enrichment (count five), are dismissed, without prejudice. Plaintiff's claims that the ETF amounts to an unenforceable penalty under California law (count one) and violates California's consumer protection law (count two) remain, along with his request for declaratory relief.

Defendants' Motion for Leave to File Supplemental Authority (Docket No. 53) is DENIED. *See supra*, n. 5.

It is FURTHER HEREBY ORDERED that the Case Management Order (Docket No. 31) is modified, pursuant the parties' Stipulation (Docket No. 54), as follows:

1. Any motion related to class certification shall be filed by **July 23, 2010**.

2. Motions to join parties and/or amend pleadings shall be filed no later than **August 13, 2010**.

3. Discovery deadlines are as follows:

   a. Factual discovery shall be completed on or before **August 13, 2010**.

   b. The parties shall follow District of Idaho Local Civil Rule 30.1 when scheduling depositions and Local Rule 33.1 for limitations on interrogatories.

c. The Plaintiff shall make expert witness disclosures, and provide copies of expert reports, pursuant to District of Idaho Local Civil Rule 26.2(b) and Federal Rule of Civil Procedure 26(a)(2)(B), on or before **September 1, 2010**.

d. The Defendant shall make expert witness disclosures, and provide copies of expert reports, pursuant to District of Idaho Local Civil Rule 26.2(b) and Federal Rule of Civil Procedure 26(a)(2)(B), on or before **October 1, 2010**.

e. Rebuttal expert witness disclosures shall be provided on or before **November 1, 2010**.

f. All discovery relevant to experts shall be completed by **December 1, 2010**.

4. All dispositive motions shall be filed on or before **January 3, 2011**.

5. The mediation shall be completed by **July 2, 2010**. A mediation case status report is due no later than **July 14, 2010**.

All other provisions of the Case Management Order shall remain unchanged.




DATED: **March 29, 2010.**

Honorable Ronald E. Bush
U. S. Magistrate Judge